UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS MANNING, JR., ) | No. C 06-03435 SBA |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | [Docket No. 18] |
| vs. ) | |
| ) | |
| CITY OF ROHNERT PARK, a ) | |
| municipal corporation; THOMAS ) | |
| BULLARD individually and in his ) | |
| official capacity as chief of police for ) | |
| the CITY OF ROHNERT PARK; | |
| JEFFREY JUSTICE individually and in | |
| his official capacity as police officer for | |
| the CITY OF ROHNERT PARK; | |
| DOES 1-100, inclusive, individually | |
| and in their capacities as police officers | |
| for the CITY OF ROHNERT PARK, | |
| | |
| Defendants. | |

This matter comes before the Court on Defendant's Motion to Dismiss.

## **BACKGROUND**[1]

This case arises out of the false arrest and detention of Plaintiff Louis Manning who was, at the time of the incident, a 28 year old African American male resident of Defendant City of Rohnert Park. Am. Compl. at ¶1.

On or about May 27, 2005, Rohnert Park Public Safety Officer Jacy Tatum was dispatched to investigate a reported robbery that took place at or around 6:30 a.m. at a Shell gas station located at 1484 E. Cotati Avenue in the City of Rohnert Park. Am. Compl. at ¶12. During the course of his investigation, Tatum interviewed the gas station's cashier, Ms. Elizabeth Olivera, who was working alone at the time of the robbery. *Id*. at ¶13. She provided Tatum with a description of two male suspects who committed the robbery as being between 22 and 27 years old, with one suspect being

---

[1]All pleaded factual allegations are taken to be true for the purposes of a Motion to Disiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

white and the other being black. *Id.* Tatum then interviewed a second eyewitness, Mr. Robert Beals who initially described the white suspect as being about 6'1" tall, and the black suspect as being 5'11" tall, and described both suspects as being about 25 years old. *Id.* at ¶14. Plaintiff Manning is approximately 5'5" tall. *Id.*

Before leaving the scene, Tatum reviewed the store's surveillance videotape of the incident and requested the City of Rohnert Park ID Tech/PSO Dan Lusk to respond to the scene to collect any forensic evidence that might assist in identifying the robbery suspects. *Id.* at ¶15. Lusk arrived on the scene at approximately 7:30 a.m. and took 15 photos of the crime scene and processed the sales counter and front entrance for latent fingerprints. *Id.* Lusk recovered several sets of latent fingerprints and booked into evidence the fingerprints along with an item that one of the suspects had touched during the robbery. *Id.*

On May 31, 2006, City of Rohnert Park Detective Jeffrey Justice was assigned to further investigate this robbery. *Id.* at ¶16. According to Justice's Incident/Investigation Report, he contacted eyewitness Mr. Beals who told him that "both suspects appeared to be in their early 20's and thin." *Id.* Later that day, he went to the gas station and reviewed the surveillance tape and determined that one of the suspects was a black male wearing an employee issued "Scandia" sweatshirt. *Id.* He then went to Scandia to inquire about whether an employee may have been involved in the robbery. *Id.*

A Scandia manager, Ms. Kelsey Mendoza, advised Justice that the particular sweatshirt Justice observed the black male suspect wearing had been used for approximately a year and a half. *Id.* at ¶17. Mendoza also provided Justice with the names of three persons working at Scandia at that time that she believed resembled the description Justice had given her. *Id.* According to Justice's report, one of the names Mendoza gave him was Louis Manning. *Id*

Justice subsequently checked the records of all three persons and declared that Plaintiff Manning was the prime suspect, although (aside from the fact that Plaintiff is African American) Plaintiff bears no resemblance to either the African American male suspect on the videotape, or the description provided by the only two eyewitnesses. *Id.* at ¶18. Justice then pieced together a photo line-up that included a picture of Plaintiff and five other subjects. *Id.* at ¶19. Justice personally

showed eyewitness Oliver the photo lineup. *Id.* Oliver pointed to Plaintiff's photo but expressly told Justice that while Plaintiff bore some resemblance to the black male suspect, she did not think he was the person who participated in the robbery. *Id.*

Still, Justice pursued Plaintiff as the robbery suspect despite the fact that Plaintiff did not match the description of the black male suspect provided by the second eyewitness, none of the latent fingerprints obtained by Lusk matched Plaintiff's fingerprints, and Plaintiff's fiancé accounted for Plaintiff's whereabouts on the morning in question. *Id.* at ¶20. Plaintiff alleges that Justice "inexplicably arrested" Plaintiff for robbery without probable cause and Plaintiff was taken to jail and remained there for 14 days until his preliminary hearing on June 14, 2005. *Id.* at ¶21. At Plaintiff's preliminary hearing, and after a brief direct and cross-examination of Justice and eyewitness Oliver, the Judge refused to hold Plaintiff in custody on the charges and dismissed the case against him. *Id.* at ¶22.

Prior to being arrested, Plaintiff was gainfully employed, but as a consequence of being incarcerated on these charges, he lost his job. *Id.* at ¶24. Consequently, Plaintiff and his family suffered a financial crisis as Plaintiff and his fiancé were expecting the birth of their first child. *Id.*

Consequently, Plaintiff filed a Complaint against the City of Rohnert Park, the Chief of Police Thomas Bullard, Officer Jeffrey Justice and Does 1-100 on May 26, 2006. Plaintiff subsequently filed an Amended Complaint on September 21, 2006. Defendants collectively filed the instant Motion to Dismiss Plaintiff's Amended Complaint on October 10, 2006.

Defendant is challenging each of Plaintiff's Fifth through Ninth and Eleventh through Fourteenth Causes of Action, all of which are premised on state law, as failing to state claims upon which relief can be granted.[2] The Fifth through Ninth and Eleventh through Thirteenth Claims are

---

[2] Plaintiff's Amended Complaint also alleges four causes of action under 42 U.S.C. section 1983 against all Defendants: (1) Violation of Plaintiff's right to be free from unreasonable seizures without probable cause under the Fourth and Fourteenth Amendments; (2) Violation of Plaintiff's right to be free from unreasonable seizures and excessive and/or arbitrary force without reasonable or probable cause under the Fourteenth Amendment; (3) Violation of Plaintiff's civil right to life and liberty and deprivation of Plaintiff's constitutionally protected rights not to be deprived of life or liberty without due process, the right to equal protection under the laws, and the right to be free from pre-conviction punishment; and (4) Violation of Plaintiff's civil rights to a familial relationship without due process of law by seizing Plaintiff by use of a false arrest and false imprisonment. None of these federal claims

3

against all Defendants and are as follows:

- the Fifth Cause of Action is for a violation of Plaintiff's right to be free from unreasonable seizures without probable cause under the California Constitution Article I, section 13;
- the Sixth Cause of Action is for violations of Plaintiff's right not to be deprived of life, liberty or property without due process of law as guaranteed under the California Constitution Article I, section 13;
- the Seventh Cause of Action is for violations of Plaintiff's right to equal protection as guaranteed under the California Constitution Article I, section 7(a);
- the Eighth Cause of Action is for violations of California Civil Code section 52.1;
- the Ninth Cause of Action is for violations of California Civil Code section 51.7;
- the Eleventh Cause of Action is for Negligence; the Twelfth Cause of Action is for Negligent Infliction of Emotional Distress; and
- the Thirteenth Cause of Action is for Intentional Infliction of Emotional Distress.

Last, Plaintiff's Fourteenth Cause of Action alleges that Chief Bullard is liable for Negligent Hiring, Training, Supervision, and Discipline.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The Court does not accept as true unreasonable inferences or conclusory allegations cast in

---

are challenged in the present motion. Plaintiff's Tenth Cause of Action is for False Imprisonment, and is also not challenged in the present Motion to Dismiss.

4

1 the form of factual allegations.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);
2 *See Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations
3 of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim.");
4 *Sprewell v. Golden State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*,
5 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat
6 a motion to dismiss for failure to state a claim.").

7 When a complaint is dismissed for failure to state a claim, "leave to amend should be granted
8 unless the court determines that the allegation of other facts consistent with the challenged pleading
9 could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d
10 1393, 1401 (9th Cir. 1986).  The Court should consider factors such as "the presence or absence of
11 undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous
12 amendments, undue prejudice to the opposing party and futility of the proposed amendment."
13 *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).  Of these factors, prejudice
14 to the opposing party is the most important.  *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387
15 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31
16 (1971)).  Leave to amend is properly denied "where the amendment would be futile."  *DeSoto v.*
17 *Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## ANALYSIS

**A.    California Government Code section 821.6 does not render Defendants statutorily immune from Plaintiff's state law claims.**

Defendants argue that all of Plaintiff's state law claims except Plaintiff's tenth cause of action (for false imprisonment), are premised on the allegation that Detective Justice maliciously, recklessly, or at best incompetently, pursued and arrested Plaintiff without probable cause, and are barred under California law on the basis of absolute immunity.  Def.s' Mot. at 3.  In support of this argument, Defendants cite California Government Code section 821.6, which states that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Defendants further argue that this immunity extends to the public entity

5

Defendant in this case under California Government Code section 815.2(b), which exempts a public entity from liability "for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Def.s' Mot at 4. Thus, Defendants argue these California Government Code provisions grant Defendants immunity even if all of Plaintiff's allegations are true.

Plaintiff responds that Defendants mischaracterize Plaintiff's allegations as asserting claims under a malicious prosecution theory, when in fact Plaintiff is alleging Defendants falsely arrested and imprisoned Plaintiff as the basis of all of his claims. Pl.'s Opp. at 4. Plaintiff argues further that Defendants reliance on California Government Code section 821.6 is misplaced, as this provision grants immunity from liability for claims based on malicious prosecution, not false arrest and imprisonment. *Id.* Plaintiff argues that the applicable law here is California Government Code section 820.4, which provides that "nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." *Id.* Thus, Plaintiff argues that California law does not provide police officers or their public employers with immunity for false arrest and imprisonment. *Id.*

Thus, critical to whether these state law causes of action can survive a 12(b)(6) motion is whether the claims should be characterized as deriving from allegations of false arrest and imprisonment or malicious prosecution, because that will determine whether California Government Code section 821.6 or 820.4 is applicable to each of the claims challenged here.[3] Plaintiff correctly states the law. The Ninth Circuit has held that under California law, public employees are not entitled to immunity from claims of false arrest and/or false imprisonment as well as other state law claims that are derived from allegations of false arrest and/or false imprisonment. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1377 (9th Cir. 1998); *Robinson v. Solano County* 278 F.3d 1007, 1016 (9th Cir. 2002). Thus, Plaintiff is correct that if his state law tort claims, such as negligence,

---

[3]The applicability of California Government Code section 815.2(b) (extending immunity to a public entity where its liability results from the act of its employee and that employee is immune from liability) depends entirely on the applicability of California Government Code section 821.6 to this case. Therefore, if 821.6 does not provide Detective Justice or Chief Bullard immunity, then 815.2(b) necessarily does not extend immunity to Defendant City of Rohnert Park.

6

negligent infliction of emotional distress, and intentional infliction of emotional distress, are derivative of a valid claim of false arrest or imprisonment, these claims are also not precluded by section 821.6. *c.f.*, *Martinez*, 141 F.3d at 1380 (because plaintiff's California Tort Claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress were derivative of a false imprisonment claim that survived summary judgment, these claims also survived summary judgment).

Defendants reply that they have already conceded that California Government Code section 821.6 does not apply to claims of false arrest and imprisonment, and that is why they are not challenging Plaintiff's tenth cause of action for false imprisonment. Def.s' Reply at 2. Defendants contend that Plaintiff's Opposition fails to rebut their argument that section 821.6 applies to all of Plaintiff's remaining state law tort claims, but Defendants' do not address the rule provided in *Martinez* and *Robinson*. *Id.* Instead, in support of their argument, Defendants cite legal authority for the proposition that immunity under this provision has been applied to each of the remaining state law causes of action alleged in Plaintiff's Amended Complaint, and argue that Plaintiff cannot cite any cases to defeat the application of section 821.6 immunity to his challenged state law tort causes of action. *Id.* However, none of the cases Defendant cites dealt with tort claims that were derived from claims of either false arrest or false imprisonment,[4] and thus these cases are not

---

[4] Defendants cite *Amylou v. County of Riverside* for the proposition that statutory immunity under section 821.6 applies to intentional and negligent infliction of emotional distress claims, but Defendants reading of the case is overbroad as the court in *Amylou* held only that the plaintiff's intentional and negligent infliction of emotional distress claims were barred by section 821.6 as the claims were premised on acts incidental to the investigation of crimes and committed in the course of a prosecution of a judicial proceeding against another person. 28 Cal. App. 4th 1205, 1209-1212 (Cal. App. 1994). Defendants next cite *Johnson v. City of Pacifica* as holding that section 821.6 grants police officers statutory immunity from negligence claims, but here again, the Defendants extend the reasoning of the case too far; the court in *Johnson* only held that police officers were statutorily immune from plaintiff's negligence claim under section 821.6 as the plaintiff's claim alleged the police officers negligently conducted an investigation that resulted in the plaintiff's arrest pursuant to a warrant and the plaintiff's temporary incarceration. 4 Cal. App. 3d 82, 83-84 (Cal. App. 1970). Finally, Defendants cite *O'Toole v. The Superior Court of San Diego County* for the proposition that section 821.6 bars claims brought under California Civil Code section 52.1. However there the court only held that summary judgment for defendants was proper because defendants were immune from liability under section 820.6 (a different statute than the one Defendants rely on) where plaintiffs' California Civil Code section 52.1 claims were premised on First Amendment violations; the court also held that one of the plaintiffs' false arrest claim failed because the officers had reasonable cause to arrest him. 140 Cal. App. 4th 488, 493, 501-08, 510 (Cal. App. 2006).

7

inconsistent with *Martinez* and *Robinson*, which permit a plaintiff to allege other state law tort claims, (such as negligence, negligent infliction of emotional distress, or intentional infliction of emotional distress), where such claims are derived from allegations of false arrest or imprisonment.

Thus, Plaintiff correctly states the law as to when section 821.6 applies. What remains at issue, however, is whether Plaintiff's Amended Complaint adequately alleges that each of Plaintiff's state law claims is premised on allegations of false arrest/false imprisonment or malicious prosecution. The critical difference between false arrest and malicious prosecution is "whether there is valid legal authority for the arrest." *Martinez*, 141 F.3d at 1380 (finding that the plaintiff's claim of false arrest failed, as the plaintiff was arrested in Mexico by Mexican police pursuant to an apparently valid Mexican warrant, and thus the claim could at best be construed as a malicious prosecution claim, barred by section 821.6).

Plaintiff argues that his entire case is premised on a false arrest and imprisonment action and is not based on malicious prosecution. Pl.'s Opp. at 2. False imprisonment consists of the unlawful violation of the personal liberty of another person, and a false arrest is merely one way in which false imprisonment may be accomplished. *Hagberg v. California Federal Bank*, 32 Cal. 4th 350, 372 (2004). The two are not separate torts. *Id.* Here, Plaintiff specifically alleges Defendants falsely arrested him. *See* Amend. Compl. at ¶¶1, 25. Although Plaintiff's Amended Complaint is unclear as to whether Plaintiff was arrested without a warrant, Plaintiff does clearly allege that Office Justice "inexplicably arrested [Plaintiff] . . . without probable cause," that Plaintiff was "arrested on . . . false charges," that Plaintiff was "taken to jail and remained there for 14 days" and that Plaintiff suffered a violation of his constitutional rights to be free from "an unreasonable search and seizure of his person." Amend. Compl. at ¶21-24.[5] Thus, as Plaintiff is *only* alleging that Defendants unlawfully arrested and held Plaintiff without probable cause, and that all damages resulted from these actions, all of Plaintiff's claims derive from his claim of false arrest/false imprisonment. Thus, Defendants do not have statutory immunity as to any of Plaintiff's state law

---

[5] In Plaintiff's Opposition, Plaintiff refers to "Plaintiff's Exhibit B," which indicates that Officer Justice arrested Plaintiff without a warrant, but no such exhibit exists in the Court's file.

8

1  claims.

2  Therefore, this Court DENIES Defendant's Motion to Dismiss Plaintiff's Eighth, Ninth,
3  Eleventh, Twelfth, and Thirteenth Causes of Action.

**B. The California Constitutional Provision forming the basis of Plaintiff's Sixth and Seventh Causes of Action does not support claims for damages, but the Court should request supplemental briefing on whether the same is true for provisions forming the basis of Plaintiff's Fifth Cause of Action.**

Defendants also argue that Plaintiff's fifth, sixth and seventh causes of action based on the California Constitution fail, because those provisions do not support causes of action for money damages. Def.'s Mot. at 6. Plaintiff did not respond to this argument.

Plaintiff's fifth claim alleges violations of Plaintiff's right to be free from unreasonable seizures without probable cause as guaranteed under Article I, Section 13 of the California Constitution. Am. Compl. at ¶42. Article I, Section 13 reads, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Plaintiff's sixth claim is for violations of Plaintiff's right not to be deprived of life, liberty or property without due process of law as guaranteed under Article I, Section 7(a) of the California Constitution. *Id.* at ¶44. Plaintiff's seventh claim is for violations of Plaintiff's right to equal protection as guaranteed under Article I, Section 7(a) of the California Constitution. *Id.* at ¶46. Article I, Section 7(a) reads in relevant part, "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws . . . ."

It is unclear whether Plaintiff is seeking money damages for any of these alleged violations, as his prayer for relief does not specify whether damages are for each and all causes of actions, and Plaintiff requests this Court enjoin the City of Rohnert Park from authorizing, allowing, or ratifying the practice of any police officer of falsely arresting law abiding citizens. In the event that Plaintiff is requesting money damages for these alleged violations of the California Constitution, Defendant correctly argues that California law precludes the recovery of money damages for claims brought under Article I, Section 7(a) of the California Constitution. *See Katzberg v. Regents of University of*

9

1  *California*, 29 Cal. 4th 300, 324 (2002) (holding there is "no evidence from which to infer within
2  Article I, section 7(a), an intent to afford a right to seek damages to remedy a violation of the due
3  process liberty interest"). Thus, Defendant's Motion to Dismiss Plaintiff's Sixth and Seventh Claims
4  is GRANTED to the extent that Plaintiff is seeking monetary damages. Plaintiff is GRANTED
5  leave to amend these claims so as to request declaratory or injunctive relief where appropriate.

6  As for Plaintiff's fifth claim, this Court cannot decide the issue of whether this claim fails to
7  state a claim upon which relief can be granted until after supplemental briefing. Defendant only
8  argues that money damages are inappropriate for claims arising under Article I, Section 13 by
9  analogy, but offers no case law specifically holding this is true for claims brought under Article I,
10 Section 13. Given that the California Supreme Court in *Katzberg* felt the need to thoroughly
11 examine whether Article I, section 7(a) specifically allowed for a damages remedy, despite the fact
12 that the California Supreme Court had found that "only two [California] decisions, each filed two
13 decades ago, have recognized an action for damages to remedy a violation of the state Constitution .
14 . . [and] [a]ll subsequent decisions addressing the issue have declined to find such an action for
15 damages," this Court cannot accept Defendant's conclusory analysis of the issue.

16 Instead, this Court ORDERS supplemental briefing on whether a damages remedy is
17 appropriate for an asserted violation of Article I, Section 13 of the California Constitution. The
18 supplemental briefing must specifically employ the framework approved by the California Supreme
19 Court in *Katzberg*. There, the court held that the appropriate framework to employ when
20 determining whether a damages remedy is appropriate for an asserted constitutional violation is: (1)
21 whether there is evidence from which a court may find or infer, within the constitutional provision at
22 issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation
23 (permitting the review of the language and history of the constitutional provision at issue); and (2) in
24 the event no affirmative intent either to authority or withhold a damages remedy is found, whether a
25 "constitutional tort" analysis under *Bivens* and its progeny permits recognition of a damages remedy.
26  29 Cal. 4th at 317. If the latter form of analysis is applied, the factors to be considered are: (1)
27 whether an adequate remedy exists; (2) the extent to which a constitutional tort action would change
28 established tort law, and the nature and significance of the constitutional provision; and (3) whether

10

any special factors exist counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages. *Id.*

Therefore, Defendant's Motion to Dismiss Plaintiff's Sixth and Seventh Claims is GRANTED. Plaintiff is GRANTED leave to amend these claims to so as to request declaratory or injunctive relief where appropriate. Defendant's Motion to Dismiss Plaintiff's Fifth Claim is neither granted nor denied, but instead this Court ORDERS SUPPLEMENTAL BRIEFING on the issue of whether Article I, Section 13 of the California Constitution permits recovery of money damages.

**C.     California Law does not recognize a cause of action for the negligent hiring, training or supervision of a governmental employee without a statutory basis for such a claim, and thus Plaintiff's Fourteenth Cause of Action should be dismissed with prejudice.**

Defendants argue that the liability of public entities under California law is strictly confined to causes of action authorized by the Government Code. Def.'s Mot. at 8-9. Defendant further argues that Plaintiff's Fourteenth Cause of Action against Defendant Chief Bullard is a claim attempting to hold Chief Bullard directly liable for the alleged shortcomings of the public agency he heads, as Bullard was not personally involved in Plaintiff's arrest, and that California courts have not permitted such a cause of action where a plaintiff does not provide a statutory basis for liability. *Id.* Plaintiff did not respond to this argument.

Defendants are correct. The California Supreme Court held that public entities in California are immune from direct common law claims of negligence under the California Tort Claims Act, California Government Code section 815(a), unless there is a statutory basis for the negligence claim. *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1179-80 (2003). A year later a California appellate court extended this same reasoning to a common law tort claim of negligence against a city and police chief by a plaintiff attempting to hold the police chief, not directly involved in the incident in that case, liable for the negligent "selection, training, retention, supervision, and discipline of police officers" in *Munoz v. City of Union City*. 120 Cal. App. 4th 1077, 1111-12 (Cal. App. 2003). There, the court rejected this tort claim and reversed the portion

11

of a jury's verdict, assigning liability based on a theory of direct negligence for not developing clearer police procedures or better officer training, against both the city and the police chief.  *Id.*

Thus, as Plaintiff's Fourteenth Cause of Action provides no statutory basis for liability, and Plaintiff has offered no contrary case law on the matter, this Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fourteenth Cause of action with prejudice.

## **CONCLUSION**

Therefore, for the reasons discussed above, this Court DENIES Defendant's Motion to Dismiss Plaintiff's Eight, Ninth, Twelfth, and Thirteenth Causes of Action as Defendants are not statutorily immune from liability for these claims.

This Court also GRANTS Defendant's Motion to Dismiss Plaintiff's Sixth and Seventh Causes of Action, and GRANTS Plaintiff leave to amend his complaint as to these claims.

This Court GRANTS Defendant's Motion to Dismiss Plaintiff's Fourteenth Cause of Action with prejudice.

This Court ORDERS supplemental briefing on the issue of whether the California constitutional provision relied on in Plaintiff's Fifth Cause of Action permits recovery of money damages.  Plaintiff and Defendant shall each file and serve a supplemental brief no later than ten (10) days from the date of this Order.  Each brief shall not exceed ten (10) pages.  After the supplemental briefs are filed, the Court will consider this matter fully submitted on the papers. Should the Court later determine that oral argument is necessary, the clerk will contact the parties and place the matter back on calendar.

IT IS SO ORDERED.

Dated: 12/11/06

SAUNDRA BROWN ARMSTRONG
United States District Judge