UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS MANNING, | No. C 06-3435WDB |
| Plaintiff | ORDER AND MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF ROHNERT PARK, et al. | |
| Defendants. | |

## I. INTRODUCTION

On May 27, 2005, two men robbed a Shell gas station in Rohnert Park. Several days later, Rohnert Park police detective Jeffrey Justice arrested Louis Manning, plaintiff in the case at bar, charging him with being one of the robbers. Two weeks later, at the conclusion of a preliminary hearing, a Superior Court judge dismissed the charge, concluding that it was not supported by probable cause.

On May 26, 2006, plaintiff filed his complaint against the City of Rohnert Park, Detective Justice,[1] and the chief of police, Thomas Bullard. On May 3, 2007, plaintiff filed his Second Amended Complaint, which includes twelve federal and

---

[1] Detective Justice currently functions as a sergeant. Declaration of Jeffrey Justice, filed October 20, 2008, at ¶1. For the sake of clarity, we refer to him as "Detective Justice" throughout.

1

state claims, each of which is premised on plaintiff's contention that Detective Justice did not have probable cause to arrest him.

On October 20, 2008, defendants filed their Motion for Summary Judgment ("Motion"). On February 11, 2009, the Court conducted a hearing in connection with defendants' Motion. The court permitted the parties to file supplemental briefs. See Order Following February 11, 2009, Hearing, filed February 13, 2009. On February 23, 2009, defendants filed their Supplemental Brief in Support of Motion for Summary Judgment. Plaintiff did not file a supplemental submission.

For the reasons stated below, the Court GRANTS defendants' Motion in its entirety.

## II.     **STANDARD ON SUMMARY JUDGMENT**

To succeed on a motion for summary judgment, the moving party must establish that, under facts that are not subject to genuine dispute, that party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In reviewing a motion for summary judgment, the Court considers the evidence in the light most favorable to the party against whom the judgment is sought.

Stated in lay terms, a motion for summary judgment by defendants is a request to the Court for a ruling that, even if we consider the evidence in the best possible light for plaintiff, the evidence is insufficient (as a matter of law) to support a finding by the trier of fact (jury) that plaintiff has proved all required elements of his claims. If the Court grants defendants' motion plaintiff is not entitled to present his (legally insufficient) evidence to a jury, and the Court must enter judgment in defendants' favor.

//
//
//

## III. DISCUSSION

Defendants contend that, even when the evidence is considered in the light most favorable to Mr. Manning, no rational jury could find that Detective Justice lacked probable cause to arrest Mr. Manning. Defendants also contend that even if a jury were to conclude, after the fact, that defendants lacked probable cause to arrest Mr. Manning without a warrant, summary judgment is proper because Detective Justice is entitled to protection under the doctrine of qualified immunity.

The Ninth Circuit describes the existence of probable cause to arrest without a warrant as follows.

> Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested. *Beck v. Ohio*, 379 U.S. 89, 91 . . . (1964). Alternatively, this court has defined probable cause as follows: when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the person arrested] had committed the crime." *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986).

*U.S. v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (affirming denial of motion to suppress). Probable cause is an objective question. The officer's subjective intention is irrelevant to whether there in fact was probable cause to arrest without a warrant.

In order to determine whether a rational trier of fact could conclude that the information known to Detective Justice was not sufficient to lead a person of reasonable caution to believe that there was "a fair probability" that Mr. Manning had committed the May 25, 2005, robbery, we must consider what the evidence demonstrates about what information was in Detective Justice's mind at the time he arrested plaintiff. Before we can make that assessment, we must determine at what point Mr. Manning was placed under arrest.

//

//

3

### A. At what point was Plaintiff "arrested?"

Viewing the evidence in the light most favorable to plaintiff that reason permits, the Court cannot preclude the possibility that a jury reasonably could make findings of fact under which, as a matter of law, plaintiff would be deemed to have been "arrested" before Detective Justice entered the apartment in which plaintiff resided with his girlfriend.

The jury could find that all of the following events occurred, and all of the following states of mind existed, before Detective Justice and the other officers entered the apartment: (1) that Detective Justice in fact had concluded that plaintiff had committed the robbery, (2) that Detective Justice believed that there was probable cause to support that conclusion, (3) that Detective Justice and Detective Corcoran intercepted plaintiff as he was about to enter a retail store (even though plaintiff had not engaged in any criminal or suspicious activity in their presence), (4) that the detectives identified themselves as police officers (orally and by displaying their badges), (5) that they detained plaintiff, (6) then put him in handcuffs, (7) then waited for the arrival of a uniformed officer (Sergeant Robinson) who was known to be en route, (8) then put plaintiff (still handcuffed) in the back seat of Sergeant Robinson's marked police car after the sergeant arrived, (9) told plaintiff that he was under arrest for robbery, (10) then left the scene in order to go search the apartment, expecting Sergeant Robinson to drive plaintiff directly to the police station without waiting to determine what the search yielded, (11) that by this point a reasonable person in plaintiff's circumstances reasonably would have believed that he was not free to leave and, reasonably, could not be sure when, whether, or on what conditions he would be released from custody, (12) that Sergeant Robinson in fact drove plaintiff to the police station while Detective Justice and other officers were conducting the search and interviewing plaintiff's girlfriend, (13) that Detective Justice told plaintiff's

girlfriend that plaintiff had been arrested for robbery, and that (14) plaintiff telephoned his girlfriend from the police station while Detective Justice and the other searching officers still were in her apartment.

If these findings were made, as they rationally could be, the law would deem plaintiff to have been "arrested" before Detective Justice and the other officers first entered the apartment that plaintiff shared with his girlfriend. *E.g., U.S. v. Parr*, 843 F.2d 1228, 1231 (9th Cir. 1988) citing *Hayes v. Florida*, 470 U.S. 811, 816 (1985).

### B. Could a rational jury find that Detective Justice lacked probable cause to arrest Mr. Manning?

Because a rational jury could make findings of fact under which the law would deem plaintiff to have been arrested before the officers entered the apartment, in determining whether the officers had probable cause to arrest plaintiff, or reasonably believed they had such probable cause, the Court may not take into account (in ruling on the pending motion) evidence or information that the officers acquired only after they entered plaintiff's apartment.

Viewing the evidence as favorably to plaintiff as reason permits, what are the material findings of fact that a jury rationally could make about the state of the evidence in Detective Justice's mind at the time he placed Mr. Manning, handcuffed, in the back of Sergeant Robinson's patrol car, expecting the sergeant to take plaintiff directly to the police station? The Court concludes that the following material facts are not subject to genuine dispute: (1) based on his review of the case file, viewing the video-tape of the robbery, his interview (by telephone) of witness Beals, and his initial interview of the victim (Ms. Olvera), Detective Justice reasonably believed that one of the robbers was a young adult African-

5

1  American male who was not overweight and was not particularly tall,[2] (2) based on
2  his review of the video-tape and his substantial direct familiarity[3] with the
3  appearance (logo/promotional design) of sweatshirts that Scandia Family Fun
4  Center had issued to its employees, Detective Justice believed that the African-
5  American suspect was wearing such a sweatshirt, hooded and black in color,
6  during the commission of the robbery,[4] (3) because he believed he had identified
7  the Scandia-issued sweatshirt being worn by the robber, Detective Justice went to
8  the local Scandia facility, where he interviewed its manager, Kelsey Mendoza, (4)
9  Ms. Mendoza informed the detective that Scandia had issued hooded black
10 sweatshirts of the kind the detective believed he had identified on the video-tape
11 only to employees and only over the preceding eighteen months or so, (5) Ms.
12 Mendoza further informed the detective that only three African-American males,
13 one of whom was the plaintiff, had worked at the Scandia Family Fun Center
14 during the period the black sweatshirts had been issued to employees, (6) Ms.

---

[2] While Mr. Beals thought that the African-American suspect might have been about 5'11", Mr. Beals admitted to Detective Justice that he probably could not identify either of the perpetrators because he did not pay close attention to them. Given Mr. Beals' admitted uncertainty about the accuracy of his description of the physical characteristics of the perpetrators, it was reasonable for Detective Justice to rely more on the evidence about the robbers' physical appearance from the video-tape and from Ms. Olvera. It is clear from the video-tape that the African-American suspect was not tall.

[3] It is not disputed that Detective Justice worked for the Scandia Family Fun Center between 1991 and 1994 and that during that period the Fun Center had issued the same type of sweatshirt (but in colors other than black) to its employees (only).

[4] Among other things, plaintiff has argued that it was unreasonable for Detective Justice to conclude that the perpetrator was wearing a Scandia sweatshirt because, according to plaintiff, the sweatshirt that is visible on the video-tape did not have a logo on the front left chest area. The Court has viewed a copy of the video-tape and finds that it is readily discernable from the video-tape that there is a white logo on the left front chest area of the robber's sweatshirt.
  The Court acknowledges, however, that the video-tape was of poor clarity and that the Court, being unfamiliar with Scandia logos and sweatshirts, would not have been able to identify the Sandia Family Fun Center logo on the front of the sweatshirt -- or even the appreciably larger design on the back. But the issue here is not whether the Court could identify either of the logos with confidence. Instead, the issue is whether a jury could conclude that it was unreasonable for Detective Justice, who was intimately familiar with the location and shape of these logos, to conclude that there was a substantial likelihood that the sweatshirt on the video was one of the sweatshirts issued by Scandia. On the record before us, we hold that a rational jury could not find that it was unreasonable for Detective Justice to draw this inference.

1 Mendoza provided the names of these three employees to Detective Justice and
2 indicated that the physical characteristics of one of them, the plaintiff, seemed
3 generally consistent with the physical characteristics of the African-American
4 robber as described (from the video-tape images) by Detective Justice, (7)
5 Detective Justice then reviewed the D.M.V. records of each of these three men,
6 from which he learned that two of the three men were significantly overweight –
7 leaving only one, the plaintiff, whose physical characteristics bore some
8 resemblance to the person who committed the robbery, (8) when he conducted a
9 records check for the plaintiff, Detective Justice discovered that Mr. Manning
10 currently was on probation and that he had suffered two prior felony convictions,
11 one for burglary and the other for forgery (two counts), (9) at this point Detective
12 Justice asked the Sonoma County Sheriff's Department to prepare a photo array of
13 African-American men, one photo of which would be of Mr. Manning, (10) this
14 array (which has been presented to the Court) includes six photographs of African-
15 American men, all of whom appear to be of about the same age, all of whom have
16 similar facial hair, and none of whom stand out as distinctly different from the
17 others in any pronounced features, (11) on June 1, 2005, five days after the
18 robbery, Detective Justice took this photo array back to the Shell station and
19 showed it to the victim, Ms. Olvera,[5] (12) after being advised orally and in writing
20 that she was under no obligation to identify any of the persons in the array and that
21 it might or might not include the robber, Ms. Olvera picked out only one picture,
22 that of Mr. Manning, and said that it "look like the guy," (13) Ms. Olvera also told

---

[5] Before he showed Ms. Olvera the photo array, Detective Justice asked her if she had remembered anything else about the African-American robber. She informed the detective that the only additional fact about him that she could remember was that he seemed to have 'something black on one of his upper front left teeth.' (Quote from Detective Justice's incident report, 6/1/2005, p. 8). Mr. Manning's teeth were not visible in the photo that Ms. Olvera singled out from the array. The fact that Mr. Manning apparently did not have "something black" on on one of his teeth when he was arrested five days after the robbery is insignificant – as there is no reason to believe that the "something black" that Ms. Olvera thought she saw was permanent.

7

Detective Justice that none of the men shown in the other photos looked like the robber, (14) Detective Justice understood that Ms. Olvera was not positive that the person depicted in the photo that she had singled out (Mr. Manning) was one of the two robbers, but he also understood that she was indicating that there was at least a substantial resemblance between the robber and the person in the photo she had selected, (15) promptly thereafter, Detective Justice confirmed (in court records and in a conversation with the plaintiff's probation officer) that Mr. Manning was on active felony probation with a search clause, (16) when he observed Mr. Manning in person just before he detained Mr. Manning, Detective Justice saw that Mr. Manning appeared to be in the same age range as the robber was reported to have been (by Mr. Beals and by Ms. Olvera) and appeared to have the same general body size as the African-American robber whose image was captured multiple times on the video-tape.

That Detective Justice had the above-described information and evidence[6] before he arrested Mr. Manning is not genuinely disputable. Could a reasonable jury conclude that a competent police officer, working with this information, could not have reasonably concluded that there was "a fair probability" that Mr. Manning had been one of the robbers? While we acknowledge that this is not a self-answering question, we are substantially inclined to the view that, as a matter of law, the indisputable facts can support only one reasonable conclusion: that there was probable cause to arrest Mr. Manning.

Stripped to essentials, the core material facts that support probable cause are these: Mr. Manning was reasonably perceived as being of the same race and of

---

[6] At about the time Detective Justice was arresting Mr. Manning, a technician was preparing a report that indicated that he had not been able to match Mr. Manning's fingerprints with any of the fingerprints taken from the scene of the robbery. It is not clear whether Detective Justice had this information at the time he arrested Mr. Manning. The fact that no match had been found, however, even if known before the arrest, would have only marginal significance in a reasonable officer's assessment of probable cause – in part because we have been presented with no reason to believe that an officer would know whether such matches were found in any significant percentage of comparable robberies.

8

approximately the same size and age as one of the robbers; that robber appeared to have been wearing (during the robbery) a distinctive type of sweatshirt that had been issued to only three African-American males – and of these three, Mr. Manning was the only one whose body type and size seemed to approximate the body size and type of the robber; even though he was a young man, Mr. Manning already had suffered two felony convictions and was on active felony probation; and the sole victim of the robbery, when presented with an independently prepared photo array of six substantially similar men indicated that only one of them, Mr. Manning, looked like the guy who committed the robbery.  We are inclined to rule that these key facts, as a matter of law, are sufficient to support a reasonable belief that there was "a fair probability" that Mr. Manning was a perpetrator of the robbery.

We do not, however, base our decision to grant defendants' motion for summary judgment on the view just articulated.  Instead, we grant the motion for summary judgment because we have concluded that, under the facts that are not subject to genuine dispute, the decision to arrest Mr. Manning is insulated from plaintiff's claims by the doctrine of qualified immunity.  This doctrine immunizes the officer's decision to arrest the plaintiff even if, after the fact, it is determined in judicial proceedings that the officer did not in fact have probable cause to support the arrest – but only if the court concludes that it was not unreasonable, under the undisputed facts, for the arresting officer to believe, given the information available to him, that he had probable cause to make the arrest.

### C.    Qualified Immunity

In resolving a claim for qualified immunity the Court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in

9

light of clearly established law and the information the officer possessed.[7] *Anderson v. Creighton*, 483 U.S. 635 (1987). If a finding that Detective Justice lacked probable cause to arrest Mr. Manning would be accessible to a rational jury, the relevant question for our purposes becomes "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Torres v. City of Los Angeles,* 548 F.3d 1197 (9th Cir. 2008) *quoting Saucier v. Katz*, 533 U.S. 194, 201-202 (2001) *receded from by Pearson v. Callahan*, 2009 WL 128768 (January 21, 2009).

Officers lose their qualified immunity only if their conduct violates a clearly established right. The right not to be arrested without probable cause (absent unusual circumstances not present here) is, of course, clearly established. But "probable cause" is a concept that can be infected with a fair amount of elasticity and indeterminacy. There is no formula for its determination, no standard set of criteria or conditions by which it can reliably be identified. At least at this stage of human evolution (if there is such a thing), probable cause rarely can be isolated by the scientific method. Instead, judgments about whether there is "a fair probability" that a person did something often must be based on commonly held (but empirically unverified) assumptions about how social or psychological or physical matters usually play out (postulates about human behavior or about likelihoods of various kinds of connections), or on perceptions or memories or inferences that are vulnerable to error. Given these realities, it is hardly surprising that even experienced and similarly situated judges can disagree about whether a given set of facts constitute probable cause.

Given these considerations, and the law's recognition that good police officers might well be frozen into inaction far too often if they were exposed to

---

[7] Although the Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. *Pearson v. Callahan*, 2009 WL 128768 (January 21, 2009).

10

civil liability every time a judge or jury, after the fact, reached a different conclusion than the officers had about whether there was probable cause, an officer is entitled to qualified immunity whenever, on facts not subject to genuine dispute, it is clear that whether probable cause existed was a close question.  Stated differently, if we conceptualize "actual" probable cause (as determined by the highest court to address the issue after the fact) as occupying a solid sphere, the law recognizes a modestly dimensioned penumbral zone around that sphere in which ultimately erroneous decisions about probable cause remain immunized from civil suit.

Under the indisputable facts described earlier in this Opinion, Detective Justice's belief that he had probable cause to arrest Mr. Manning clearly fell within that protected penumbral zone. While it might be debatable whether probable cause for the arrest existed, it is not reasonably debatable that the question was at least a close one.  There was a convergence of too many factors that rationally pointed toward Mr. Manning as a likely participant in the robbery to permit us to conclude that it was unreasonable for Detective Justice to reach the conclusion he did.

### D. *Monell* Claims

Because plaintiff could not prove, on the indisputable facts, that it was unreasonable for Detective Justice to believe that he had probable cause to make the arrest, there is no predicate on which plaintiff could proceed with his Monell claims. *Accord, Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001).

//
//
//
//
//
//

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS defendants' Motion for Summary Judgment in its entirety.  Judgment will be entered in favor of defendants on all of the claims asserted in plaintiff's Second Amended Complaint, filed May 3, 2007.

IT IS SO ORDERED AND ADJUDGED.

Dated:   March 3, 2009

WAYNE D. BRAZIL
United States Magistrate Judge